

Louis V. Fasulo, Esq.– NY & NJ
Samuel M. Braverman, Esq.– NY & NJ
Charles Di Maggio, Esq.– NY & CO

www.FBDMLaw.com

April 6, 2020

**Please File Under Seal**
Hon. Andrew L. Carter, Jr.
United States District Judge
United States Courthouse
40 Foley Square
New York, New York 10007

Re:   United States v. Mykel Mays
Dkt.   18 Cr 00657 (ALC)

Dear Judge Carter:

    I submit this memorandum in support of Mykel Mays, who is scheduled to be sentenced by this Court on May 5, 2020 upon her plea of guilty to one count of Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base in violation of 21 USC §846, 21 USC §841(b)(1)(B).

    For the reasons stated herein, I respectfully request that this Court impose a sentence of time served followed by 2 years of post-release supervision with the condition of completing an outpatient substance abuse treatment, and waive a fine, so she can continue to take care of her sister and her mother, and attend to her various health and addiction issues, which will aid her in leading a productive crime-free and healthy life.

    Despite Ms. Mays' hardships due to her stressful upbringing and drug addiction, she has learned from her mistakes and seeks to take positive steps to lead a crime free life

### The Plea Agreement, Guidelines Calculation, and Criminal History

    On September 10, 2019, Ms. Mayes appeared before the Honorable Deborah A. Batts and pled guilty to Count One of the above referenced indictment, participating in a conspiracy to distribute and possess with intent to distribute 28 grams or more of mixtures and substances containing a detectable amount of crack cocaine, in violation of 21 USC §846, 21 USC §841(b)(1)(B). Pursuant to her plea agreement, Ms. Mays admits to conspiring

225 Broadway, Suite 715
New York, New York 10007
Tel (212) 566-6213
Fax (212) 566-8165

505 Eighth Avenue, Suite 300
New York, New York 10018
Tel (212) 967-0352
Fax (201) 596-2724

Post Office Box 127
Tenafly, New Jersey 07670
Tel (201) 569-1595
Fax (201) 596-2724

with others to distribute and possess substances containing a detectable amount of cocaine from in or about October 2016 and up to July 2018, along with Dion Mickens, Henry Fermin, Jonathan Richardson, and David Braun.

In the instant matter, Probation has calculated the guidelines as follows (consistent with the plea agreement) (PSR ¶¶ 26-36):

1. Guideline §2D1.1(c)(5) and (c)(8) sets the base offense level    30
3. Guideline §§ 2D1.1(b)(18) and 5C1.2(a)(1-5) Safety Valve    -2
4. Guideline §3E1.1(a and b) Acceptance of Responsibility    -3
5. Total Offense Level    25

As for Ms. Mays' criminal history, she has two prior contacts with the criminal justice system, resulting in a criminal history score of one and is, thus, a Criminal History Category I. When Ms. Mays was 16 years old (12 years ago) she, along with others, was arrested for robbing a pizza delivery worker of $20 along with three pizza pies and a pizza delivery box, and for hitting the delivery worker, prior to the robbery. Since Ms. Mays was adjudicated as a youthful offender and received a conditional discharge, the USSG excludes this offense from the guideline criminal history calculations. When Ms. Mayes was 19 years old, she was arrested for failing to pay to enter the subway by doubling up with another person at the turnstile entry. The total offense level of 25, criminal history category I, renders a guideline sentence of 57 to 71 months, consistent with the calculation by the Government and Probation.

Ms. Mays, who was residing with her mother and helping to take care of her sister when she was arrested for the instant offense, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, which led her to participate in the crack transactions over an eight-month period at the direction of another individual. Probation recommends the lowest guideline sentence of fifty-seven months, and the Government recommends that a below guideline sentence would be sufficient, but not greater than necessary to serve the legitimate purposes of sentencing.

Mykel Mays stands before this Court for sentencing after her acceptance of responsibility for her participation in a conspiracy to sell cocaine. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ms. Mays was a willing participant in these drug sales, and she benefited from their execution. Ms. Mays takes full responsibility for this criminal act and its consequences for both her and her community.

Ms. Mays is 28 years old and was born in New York, New York in 1992 to Michael Wells and Carol Mays. Ms. Mays' parents separated when she was just a toddler and when she was 12 years old her father was incarcerated on murder charges, creating an indelible impact on her life along with great amounts of stress. Ms. Mays was raised primarily by her mother and has an older sister, Courtney and a younger step-brother, Marcus.

225 Broadway, Suite 715             505 Eighth Avenue, Suite 300         Post Office Box 127
New York, New York 10007        New York, New York 10018         Tenafly, New Jersey 07670
Tel (212) 566-6213                         Tel (212) 967-0352                           Tel (201) 569-1595
Fax (212) 566-8165                        Fax (201) 596-2724                          Fax (201) 596-2724

███████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████.
Unfortunately, it was this habit that led Ms. Mays to become involved with the wrong people. Ms. Mays was attending Central Park East High School and saw her school therapist twice weekly and a psychiatrist once a month for nine months, but dropped out of high school during the eleventh grade.

When Ms. Mays was 24 years old, her life as she knew it changed forever when her mother and older sister were both hospitalized. Ms. Mays' sister Courtney suffered from a stroke, which left her paralyzed on her left side and causes her to still suffer from seizures. Shortly after Courtney's stroke, Ms. Mays' mother Carol was hospitalized for a month due to a cardiac arrest and sepsis. Although Ms. Mays' mother recovered from her heart condition, she continues to suffer from hypertension. Receiving care in a rehabilitation center, her sister, Courtney, wanted to come home. However, there was no way that Courtney could live at home without round-the-clock live-in help. With unconditional love and support, Ms. Mays and her mother applied for the Consumer Directed Personal Assistance Program (CDPAP) so they could both care for her sister, allowing her sister to move back home with them.

Although Ms. Mays' mother was the primary caretaker for Courtney, with Ms. Mays as the back-up caretaker, Ms. Mays' mother could not care for Courtney without the additional help of Ms. Mays as Courtney is paralyzed and also suffers from seizures. Ms. Mays' incarceration has integrally impacted her mother and sister's lives. Although her step-brother Marcus has had to step in to care for Courtney, and Ms. Mays's mother is grateful for Marcus' help, she has emphasized the need for Ms. Mays to return home as she is truly the only one who can completely attend to Courtney's needs as the CDPAP backup. Additionally, Marcus will be moving as he hopes to be going away to college soon. As such, Ms. Mays' mother has implored how she very much depends on her daughter to help out around the home the elder Ms. Mays suffers from cardiac issues as well and needs Mykel home to care for her sister and ease her burden.  Upon Ms. Mays' release, her mother will welcome her back to her family home with open arms and Ms. Mays will again care for her sister.

████████████████████ has cost her substantial financial hardship, interfered with her education along with her emotional and mental health, and led directly to her recent involvement in the instant action. █████████████████████ has interfered with many parts of her life, her mother comments that she "has a good heart." It is this characteristic that played a part in Ms. Mays' taking part in the Summer Youth Employment Project, working as an Attending Home Care worker, and putting her own wants and needs of living by herself or with friends second to her sister's needs—to live at home and care for her.

225 Broadway, Suite 715  
New York, New York 10007  
Tel (212) 566-6213  
Fax (212) 566-8165  

505 Eighth Avenue, Suite 300  
New York, New York 10018  
Tel (212) 967-0352  
Fax (201) 596-2724  

Post Office Box 127  
Tenafly, New Jersey 07670  
Tel (201) 569-1595  
Fax (201) 596-2724

Since Ms. Mays' incarceration, her best friend, Destiny discusses the impact Ms. Mays has made on her life when she fell on hard times and how "when I went through one of the toughest moments in my life, Mykel was there to play that older sister role. She made sure to tell me I have a beautiful soul and never to forget that." Destiny also discusses how Ms. Mays was involved with the wrong crowd and how she has used her incarceration to better herself by focusing on her future and education and how she is excited to go back to school.

Ms. Mays' other friends and family attest to the fact that she plays an important role as a caregiver for her sister and also greatly helps her mother and extended family.

Ms. Mays has used her incarceration to reflect on her past actions and move forward. She took several classes while incarcerated through a General Education Program and earned her GED degree and diploma in December of 2019. She also currently works in the sanitation unit of the prison. Additionally, this experience has taught her to value her contribution to society, as Ms. Mays is currently enrolled in a college program through Pace University entitled "Learning From Each Other Over Time," so she can move forward with her education. Lastly, besides focusing on her own sobriety, Ms. Mays is helping other incarcerated individuals on suicide watch as an inmate companion.

Upon her release, Ms. Mays is looking forward to living with and helping to take care of her sister and mother who depend on her help, as well as furthering her education.

As explained and detailed in the Government's Sentencing Letter and Recommendation, "a sentence below the stipulated Guidelines Range is appropriate here." The Government further explained: "Unlike many of her co-defendants, the defendant did not sell large wholesale quantities of crack cocaine. Rather, she generally sold small retail quantities of several bags at a time." 

Finally, also attached is a letter from her mother and sister, which attest to Ms. Mays' valuable contributions within her household. In fashioning an appropriate sentence, each earnestly asks the Court to consider her support from family and friends, her good character, her experience overcoming family hardship, and all of the past setbacks that Ms. Mays has overcome. Most recently, Ms. Mays was a victim of sexual misconduct while in custody when another female inmate inappropriately touched her. Ms. Mays reported this to her counselor

and the inmate was transferred. Despite all the setbacks, she continues to think about the goals she has set for herself.

In United States v. Booker, 543 US 220, 258 (2005), the Supreme Court held that the district court has the duty to '*consider*' the recommended guideline range along with the other factors listed in §3553(a).[1] However, in United States v. Crosby, 397 F.3d 103, 114 (2d Cir. 2005), the Second Circuit held that: "a District Court may not presume that a Guideline sentence is reasonable, it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense. District judges are, as a result, generally free to impose sentences outside the recommended range. District judges may exercise discretion in fitting sentences to a defendant's individual characteristics." In 2009, the Supreme Court went further in Nelson v. United States, 129 S.Ct. 890 (2009) by bluntly stating "The Guidelines are not only *not mandatory* on sentencing courts, they are also not *presumed* reasonable." [Emphasis in original] Our Circuit has supported this downward pressure on sentencing by reiterating that the duty of the sentencing court is to impose the lowest sentence available that satisfies all the criteria of §3553(a). See, e.g., United States v. Dorvee, 616 F.3d 174, 183-184 (2nd Cir., 2010) ("In conducting this review, a district court needs to be mindful of the fact that it is 'emphatically clear' that the 'Guidelines are guidelines that is, they are truly advisory.'", citing to United States v. Cavera, 550 F.3d 180, 189 (2nd Cir., 2008) (en banc); See also United States v. Fernandez, 443 F.3d 19, 27 (2d Cir.2006) (declining to establish "any presumption, rebuttable or otherwise, that a Guidelines sentence is reasonable"); and also United States v. Ministro-Tapia, 470 F.3d 137, 142 (2d Cir. 2006) ("Plainly, if a district court were explicitly to conclude that two sentences equally served the statutory purpose of § 3553, it could not ... impose the higher.")

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Gall v. United States, 128 S.Ct. 586, 597 (2007), citing Koon *v.* United States, 518 U.S. 81, 113 (1996). Gall reinforced the historical and essential role that district judges play in personally assessing a person and his offense and fashioning an appropriate sentence, as opposed to being beholden to some arbitrary or impersonal standard. "We reject, however, an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range. We also reject the use of a rigid mathematical formula that uses

---

[1] 18 USC § 3553(a) sets forth the criteria for a sentencing court to use in evaluating what a District Court should consider in imposing a sentence is sufficient but not greater than necessary to achieve all the goals of sentencing, including: The nature and circumstances of the offense and the history and characteristics of the defendant (18 U.S.C. § 3553 (a)(l)); and the need for the sentence imposed to: Reflect the seriousness of the offense, Promote respect for the law and to provide just punishment for the offense, To afford adequate deterrence to criminal conduct; Be aware of the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; And to protect the public from further crimes of the defendant (18 U.S.C. § 3553 (a)(2)). Finally, the Court has the duty to impose a sentence that is sufficient, but not greater than necessary, to accomplish all the above goals.

the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." Gall, 128 S.Ct 586 at 597.

Ms. Mays has addressed the court in a letter reiterating her remorse for her failure in this case and her plan for going forward. A defendant's statement to the Court permits "the defendant to present personal characteristics to enable the sentencing court to craft an individualized sentence." United States v. Ward, 732 F.3d 175, at 181(3rd Cir. 2013). It "is designed to temper punishment with mercy in appropriate cases, and to ensure that sentencing reflects individualized circumstances." United States v. De Alba Pagan, 33 F.3d 125, 129 (1st Cir. 1994). "In an age of staggering crime rates and an overburdened justice system, courts must continue to be cautious to avoid the appearance of dispensing assembly-line justice." United States v. Barnes, 948 F.2d 325, 331 (7th Cir. 1991)

Thus, a sentencing court, after considering the advisory Guidelines, is free to fashion whatever reasonable sentence that it deems appropriate based upon the §3553(a) factors. Any sentence by a court will stand as long as (1) the record is clear that the district court considered the §3553(a) factors and (2) the sentence imposed is supported with a rationale based on the record.

### Summary and Conclusion

Ms. Mays' actions in this case are an enormous disappointment to herself and to her family and future. Further, it is clear to her that her sobriety is the most important goal.

For the reasons stated herein, I respectfully request that this Court impose a sentence of Time Served followed by two years of post-release supervision, along with a condition of outpatient drug treatment, no imposition of a fine, and impose the $100 mandatory special assessment.

I thank the Court for its consideration.

Respectfully submitted,

s/Louis V. Fasulo
Louis V. Fasulo
Fasulo Braverman & DiMaggio, LLP.
225 Broadway, Suite 715
New York, New York 10007
Tel: (212) 566 6213

Cc:   Danielle Sassoon, AUSA (Via email)
      Andrew Chan, AUSA (Via email)